DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CARLOS M. RIVERA** and **YANIRA J. PENA SANTIAGO,**
Appellants,

v.

**WELLS FARGO BANK, N.A.,**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS**
**INCORPORATED** as Nominee for FDIC as Receiver for **AMTRUST BANK,**
**SHAUGHNESSY VILLAGE HOMEOWNERS ASSOCIATION, INC.,** and
**OLYMPIA MASTER ASSOCIATION, INC.,**
Appellees.

No. 4D14-2273

[April 20, 2016]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Howard H. Harrison, Senior Judge; L.T. Case No. 2010CA003319.

Brian Korte and Scott J. Wortman of Korte and Wortman, P.A., West Palm Beach, for appellants.

Donna L. Eng, Michael K. Winston and Dean A. Morande of Carlton Fields Jorden Burt, P.A., West Palm Beach, for appellee Wells Fargo Bank, N.A.

GERBER, J.

The borrowers appeal from the circuit court's final judgment of foreclosure in the bank's favor after a non-jury trial. The note upon which the foreclosure action was based was an electronic note ("e-note"). The borrowers argue, among other things, that the plaintiff, Wells Fargo Bank, N.A. ("the bank") did not prove the identity of the e-note's current owner or that the e-note's current owner authorized the bank to pursue the foreclosure. We conclude the borrowers' arguments lack merit. We affirm.

We present this opinion in four parts: (1) a description of the e-note; (2) a recitation of the instant case's procedural history; (3) a summary of the non-jury trial; and (4) our review of the borrowers' arguments.

## 1. The E-Note

On April 1, 2008, the borrowers executed an e-note in favor of Homebuyers Financial, LLC. The e-note included the following terms, in pertinent part:

**12. ISSUANCE OF TRANSFERABLE RECORD; IDENTIFICATION OF NOTE HOLDER; CONVERSION FROM ELECTRONIC NOTE TO PAPER-BASED NOTE**

(A) I expressly state that I have signed this electronically created Note (the "Electronic Note") using an Electronic Signature. By doing this, I am indicating that I agree to the terms of this Electronic Note. I also agree that this Electronic Note may be Authenticated, Stored and Transmitted by Electronic Means (as defined in Section 12(F)), and will be valid for all legal purposes, as set forth in the Uniform Electronic Transactions Act, as enacted in the jurisdiction where the Property is located ("UETA"), the Electronic Signatures in Global and National Commerce Act ("E-SIGN"), or both, as applicable. In addition, I agree that this Electronic Note will be an effective, enforceable and valid Transferable Record (as defined in Section 12(F)) and may be created, authenticated, stored, transmitted and transferred in a manner consistent with and permitted by the Transferable Records sections of UETA or ESIGN.

(B) Except as indicated in Sections 12(D) and (E) below, the identity of the Note Holder and any person to whom this Electronic Note is later transferred will be recorded in a registry maintained by <u>MERSCORP, Inc., a Delaware corporation</u> or in another registry to which the records are later transferred (the "Note Holder Registry"). The authoritative copy of this Electronic Note will be the copy identified by the Note Holder after loan closing but prior to registration in the Note Holder Registry. If this Electronic Note has been registered in the Note Holder Registry, then the authoritative copy will be the copy identified by the Note Holder of record in the Note Holder Registry or the Loan Servicer (as defined in the Security Instrument) acting at the direction of the Note Holder, as the authoritative copy. The current identity of the Note Holder and the location of the authoritative copy, as reflected in the Note Holder Registry, will be available from the Note Holder or Loan Servicer, as

applicable. The only copy of this Electronic Note that is the authoritative copy is the copy that is within the control of the person identified as the Note Holder in the Note Holder Registry (or that person's designee). No other copy of this Electronic Note may be the authoritative copy.

(C) If Section 12(B) fails to identify a Note Holder Registry, the Note Holder (which includes any person to whom this Electronic Note is later transferred) will be established by, and identified in accordance with, the systems and processes of the electronic storage system on which this Electronic Note is stored.

(D) I expressly agree that the Note Holder and any person to whom this Electronic Note is later transferred shall have the right to convert this Electronic Note at any time into a paper-based Note (the "Paper-Based Note"). . . .

. . . .

(F) The following terms and phrases are defined as follows: (i) "Authenticated, Store and Transmitted by Electronic Means" means that this Electronic Note will be identified as the Note that I signed, saved, and sent using electrical, digital, wireless, or similar technology; (ii) "Electronic Record" means a record created, generated, sent, communicated, received, or stored by electronic means; (iii) "Electronic Signature" means an electronic symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign a record; (iv) "Record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form; and (v) "Transferable Record" means an electronic record that: (a) would be a note under Article 3 of the Uniform Commercial Code if the electronic record were in writing and (b) I, as the issuer, have agreed is a Transferable Record.

The e-note was secured by a mortgage. The mortgage identified Homebuyers as the lender and MERS as the mortgagee.

## 2. The Procedural History

In January 2010, the bank filed a complaint to foreclose the mortgage based on the borrowers' default. In the complaint, the bank did not refer to the fact that the note was an e-note. Instead, the bank alleged that it was the "servicer for the owner and acting on behalf of the owner with authority to do so" and was "the present designated holder of the note and mortgage with authority to pursue the present action." Although the bank attached to the complaint a copy of the mortgage, the bank did not attach to the complaint a copy of the e-note.

In November 2010, the bank filed an amended complaint. In the amended complaint, the bank alleged Federal National Mortgage Association ("Fannie Mae") "is the owner of the note"; the bank "is the servicer of the loan and is holder of the note"; and Fannie Mae "has authorized [the bank] to bring this action." The proposed amended complaint then contained counts for mortgage foreclosure and re-establishment of lost note. The lost note count alleged:

> [The bank] was in possession of the Mortgage Note and entitled to enforce it when loss of possession occurred or [the bank] has been assigned the right to enforce the Mortgage Note. (See the attached true copy of the Note.)
>
> . . . .
>
> At some point between April 1, 2008, and the present, the Mortgage Note has either been lost or destroyed and the [bank] is unable to state the manner in which this occurred. After due and diligent search, [the bank] has been unable to obtain possession of the Mortgage Note.

Attached to the amended complaint were copies of the mortgage and the e-note. The e-note's last page contained the following notations:

> Electronically signed by [borrower] Yanira J Pena Santiago on 4/1/2008 6:13:03 PM
>
> YaniraJPena Santiago (Seal) - Borrower
>
> Electronically signed by [borrower] Carlos M Rivera on 4/1/2008 6:13:29 PM
>
> CarlosMRivera (Seal) - Borrower

4

In 2011, the borrowers filed a suggestion of bankruptcy. In the bankruptcy case, the borrowers identified the e-note and mortgage as a debt to the bank. The bankruptcy court later discharged the borrowers from bankruptcy without discharging the borrowers' debt to the bank.

In June 2013, the bank filed an "E-NOTE CERTIFICATE OF AUTHENTICATION," in which the bank's assistant vice president attested:

> 1. . . . The Bank acts as a servicer for [Fannie Mae] with respect to the residential mortgage loan executed . . . by [the Borrowers] . . . . The promissory note evidencing the Borrowers' obligation to repay the Loan is an electronic record, as authorized by the federal ESIGN Act, 15 USC § 7001 et seq., and in particular 15 USC § 7021.
>
> 2. As part of its function as servicer, the Bank maintains a copy of the Borrowers' electronic promissory note on behalf of Fannie Mae. I am responsibilities [sic] for overseeing the process by which the Bank maintains the electronic promissory notes evidencing residential mortgage loans. ("Electronic Records").
>
> 3. Each Electronic Record is received in accordance with established procedures and processes for reliable receipt, storage and management of Electronic Records (the "Electronic Record Procedures"). The Electronic Record Procedures provide controls to assure that each Electronic Record is accurately received as originally executed and transmitted, and indexed appropriately for later identification and retrieval. Each Electronic Record is protected against undetected alteration by industry-standard encryption techniques and system controls. The Electronic Record is an official record of the Bank and is readily accessible for later reference.
>
> 4. Each Electronic Record is maintained and stored by the Bank in the ordinary course of business. The Electronic Records are maintained and stored by the Bank continuously from the time of receipt.
>
> 5. The paper copy of the Electronic Record attached . . . is a true and correct copy of the Borrowers' promissory note described above, as maintained and stored by the Bank in

accordance with the procedures in Paragraphs 3 and 4 of this Certificate.

Attached to the sworn certificate of authentication was a copy of the e-note bearing the borrowers' electronic signatures. This copy of the e-note also bore a notation at the top of each page stating "Form 3210e – Florida Fixed Rate Note – Single Family – Fannie Mae UNIFORM INSTRUMENT." Also attached was a "Summary Information" sheet describing the bank as the "Controller" and "Delegatee" of the e-note; indicating that the e-note was located with the bank; identifying the property address; and containing the following information:

Registration Date:   04/01/2008   22:21
Borrower(s):            Pena Santiago, Yanira J
                            Rivera, Carlos M

Also attached was a document from MERS showing that the bank had electronic possession of the e-note, and that the borrowers' electronic signatures on the e-note were successfully validated.

In October 2013, the borrowers answered the amended complaint, and alleged as an affirmative defense that the bank lacked standing. Specifically, the borrowers alleged that the bank "failed to allege ultimate facts as to how or why it came to be the owner and holder of the note and mortgage when the Note was secured." Another affirmative defense challenged the "lack of authenticity and/or validity of any signatures or indorsements on the Note . . . pursuant to Florida Statute 673.3081."

### 3. The Non-Jury Trial

At the non-jury trial, the bank stated it was voluntarily dismissing its lost note count because "[t]hat was an error." The borrowers then stipulated to the admissibility of five bank exhibits:

(1) a copy of the mortgage;
(2) a copy of the bank's pre-suit notice of default, acceleration, and right to reinstatement;
(3) a screen shot of the borrowers' loan payment history showing that the bank became the loan's servicer on August 1, 2008, and showing that the borrowers made payments to the bank until June 1, 2009;
(4) a screen shot documenting Fannie Mae's ownership of the note and mortgage, and a copy of Fannie Mae's

appointment of the bank as Fannie Mae's attorney-in-fact to foreclose upon mortgages; and

(5) a copy of the borrower's bankruptcy petition identifying the e-note and mortgage as a debt to the bank, and a copy of the bankruptcy court's order discharging the borrowers from bankruptcy without discharging the borrowers' debt to the bank.

However, the borrowers objected to the bank's sixth exhibit, which was comprised of a paper copy of the e-note, the certificate of authentication, and the certificate's attachments.

The bank called its loan verification analyst as a witness in an attempt to introduce the composite exhibit into evidence. The witness explained that the certificate of authentication

illustrat[es] the recordkeeping of [the bank's] e-notes, and attest[s] to this e-note being in the electronic form. The e-note was attached to the certification, and right behind it [the bank] attached a document from MERS showing that [the bank] had the electronic possession of the e-note, as well as the signature validation, showing that the signature on the e-note was successfully validated.

Following that testimony, the bank offered the composite exhibit into evidence. The borrowers raised a hearsay objection. The court overruled the objection, and admitted the composite exhibit into evidence.

On cross-examination, the bank's witness agreed with the borrowers' counsel that because the note was an e-note, there was no hard copy original note, and there were no endorsements attached to it.

On re-direct, the bank's counsel asked its witness when the bank obtained the right to enforce the e-note. The borrowers objected under hearsay and the best evidence rule. The court reserved ruling on the objections. The bank's witness then testified: "The payment history contains an acquisition screen that's dated August 1, 2008. That's when [the bank] became the servicer of this loan with rights to enforce the note." The borrowers did not then seek to obtain a ruling on their objections. The borrowers also did not offer any evidence during the trial.

The trial court entered its final judgment of foreclosure in the bank's favor. This appeal followed.

## 4. Our Review of the Borrowers' Arguments

The borrowers argue that the bank failed to establish standing to file suit when this action was commenced because the bank did not prove that: (1) it had pre-suit possession of the e-note; (2) the e-note contained the borrowers' signatures; (3) the e-note's terms for electronic transfers of the e-note to later holders were met; or (4) Fannie Mae owned the e-note and authorized the bank to pursue the foreclosure.

The borrowers' first and third arguments were not raised in the trial court and thus are not cognizable on appeal. *See Aills v. Boemi*, 29 So. 3d 1105, 1108-09 (Fla. 2010) ("In order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.").

The borrowers' second and fourth arguments lack merit, applying our de novo review. *See Lamb v. Nationstar Mortg., LLC*, 174 So. 3d 1039, 1040 (Fla. 4th DCA 2015) ("This court reviews the sufficiency of the evidence to prove standing to bring a foreclosure action de novo.") (citation omitted).

On the borrowers' second argument, section 673.3081(1), Florida Statutes (2010), Uniform Commercial Code Comment, provides: "[U]ntil some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid." Here, the borrowers did not introduce any evidence to support a finding that their electronic signatures on the e-note were forged or unauthorized. Thus, the bank was not required to prove that their electronic signatures were valid.

On the borrowers' fourth argument, the bank presented competent, substantial evidence that Fannie Mae owned the e-note and authorized the bank to pursue the foreclosure. We base this conclusion on: (a) our examination of section 668.50, Florida Statutes (2010), otherwise known as the "Uniform Electronic Transactions Act"; and (b) our review of the bank's other evidence in the case. We address each in turn.

### a. The Uniform Electronic Transactions Act

The Uniform Electronic Transactions Act provides, in pertinent part:

> (16) Transferable records.—
>
> (a) For purposes of this paragraph, "transferable record" means an electronic record that:

1. Would be a note under chapter 673, or a document under chapter 677, if the electronic record were in writing.

2. The issuer of the electronic record expressly has agreed is a transferable record.

(b) A person has control of a transferable record if a system employed for evidencing the transfer of interests in the transferable record reliably establishes that person as the person to which the transferable record was issued or transferred.

(c) A system satisfies paragraph (b), and a person is deemed to have control of a transferable record, if the transferable record is created, stored, and assigned in such a manner that:

1. A single authoritative copy of the transferable record exists which is unique, identifiable, and, except as otherwise provided in subparagraphs 4., 5., and 6., unalterable.

2. The authoritative copy identifies the person asserting control as the person to which the transferable record was issued or, if the authoritative copy indicates that the transferable record has been transferred, the person to which the transferable record was most recently transferred.

3. The authoritative copy is communicated to and maintained by the person asserting control or its designated custodian.

. . . .

(d) Except as otherwise agreed, a person having control of a transferable record is the holder, as defined in s. 671.201(21), of the transferable record and has the same rights and defenses as a holder of an equivalent record or writing under the Uniform Commercial Code, including, if the applicable statutory requirements under s. 673.3021, s. 677.501, or s. 679.330 are satisfied, the rights and defenses of a holder in due course, a holder to which a negotiable document of title has been duly negotiated, or a purchaser, respectively. Delivery, possession, and indorsement are not required to obtain or exercise any of the rights under this paragraph.

(e)     Except as otherwise agreed, an obligor under a transferable record has the same rights and defenses as an equivalent obligor under equivalent records or writings under the Uniform Commercial Code.

(f)     If requested by a person against which enforcement is sought, the person seeking to enforce the transferable record shall provide reasonable proof that the person is in control of the transferable record.  Proof may include access to the authoritative copy of the transferable record and related business records sufficient to review the terms of the transferable record and to establish the identity of the person having control of the transferable record.

§ 668.50(16), Fla. Stat. (2010).[1]

Applying the Uniform Electronic Transaction Act here, the bank presented competent, substantial evidence proving that Fannie Mae owned the e-note and authorized the bank to pursue the foreclosure.  The e-note, on its face, is a "transferable record" because it is an electronic record that would be a note under chapter 673 if it were in writing, and its issuer expressly agreed on its face that it was a transferable record.  § 668.50(16)(a).  The bank's evidence proved that Fannie Mae had control of the e-note by showing that the bank, as Fannie Mae's servicer, employed a system reliably establishing Fannie Mae as the entity to which the e-note was transferred.  § 668.50(16)(b).  According to the bank's evidence, the bank's system stored the e-note in such a manner that a single authoritative copy of the e-note exists which is unique, identifiable, and unalterable.  § 668.50(16)(c)1.  That authoritative copy, introduced into evidence by the bank as Fannie Mae's designated custodian, identified Fannie Mae as the entity to which the transferable record was most recently transferred.  § 668.50(16)(c)2., 3.  That authoritative copy was supplemented by the "Summary Information" sheet, describing the bank as the "Controller" and "Delegatee" of the e-note and indicating that the e-

---

[1]     In 2014, after the trial court entered the final judgment in this case, our supreme court adopted Florida Rule of Civil Procedure 1.115, entitled "Pleading Mortgage Foreclosures."  The new rule states, in pertinent part:  "The term 'original note' or 'original promissory note' . . . *includes a transferable record, as defined by the Uniform Electronic Transactions Act in section 668.50(16), Florida Statutes.*"  Fla. R. Civ. P. 1.115(b) (2014) (emphasis added).

note was located with the bank, and by the document from MERS showing that the bank had electronic possession of the e-note.

Because the bank proved that Fannie Mae had control of the e-note, and that the bank was Fannie Mae's designated custodian, the bank is the e-note's holder, as defined in section 671.201(21), Florida Statutes (2010), and has the same rights as a holder of an equivalent record or writing under the Uniform Commercial Code. § 668.50(16)(d). Delivery, possession, and indorsement were not required to exercise any of those rights. *Id.*

### b. *The Bank's Other Evidence in This Case*

The bank's other competent, substantial evidence in this case proved that Fannie Mae owned the e-note and authorized the bank to pursue the foreclosure. The borrowers stipulated to the admissibility of the bank's exhibits 2 through 5. Exhibit 2, which was the notice of default, acceleration, and right to reinstatement, was issued by the bank without objection. Exhibit 3, which was a screen shot of the borrowers' loan payment history, showed that the bank became the loan's servicer on August 1, 2008, and that the borrowers made payments to the bank until June 1, 2009. Exhibit 4 documented Fannie Mae's ownership of the note and mortgage and Fannie Mae's appointment of the bank as Fannie Mae's attorney-in-fact to foreclose upon mortgages. Exhibit 5, which was a composite of the borrowers' bankruptcy petition and the bankruptcy court's order discharging the borrowers from bankruptcy, respectively identified the e-note and mortgage as a debt to the bank, and indicated that the borrowers' debt to the bank was not discharged.

The bank's witness also provided competent, substantial evidence to prove that Fannie Mae authorized the bank to pursue the foreclosure. When the bank's counsel asked its witness on re-direct when the bank obtained the right to enforce the e-note, the bank's witness answered: "The payment history contains an acquisition screen that's dated August 1, 2008. That's when [the bank] became the servicer of this loan with rights to enforce the note." The borrowers did not challenge this testimony.

Based on the foregoing, the bank presented competent, substantial evidence that Fannie Mae owned the e-note and authorized the bank to pursue the foreclosure. We affirm on that argument and the other arguments addressed above.

*Affirmed.*

11

MAY and DAMOORGIAN, JJ., concur.

*　　　*　　　*

***Not final until disposition of timely filed motion for rehearing.***